**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**AARON L. JONES, SR.,** *et al.*,

                **Plaintiffs,**              **Civil Action 2:20-cv-3301**
        **v.**                        **Judge Sarah D. Morrison**
                                       **Magistrate Judge Elizabeth P. Deavers**

**MIKE DEWINE,** *et al.*,

                **Defendants.**

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

On May 6, 2020, twenty-one Plaintiffs, who are state inmates under the supervision of the Ohio Department of Rehabilitation and Corrections ("ODRC") at the Belmont Correctional Institution, proceeding without the assistance of counsel, filed this putative class action under 42 U.S.C. § 1983 against Governor Mike DeWine and the ODRC. (ECF No. 1.) Plaintiffs initiated this action in the United States District Court for the Northern District of Ohio, but on June 29, 2020, the case was transferred to this Court. (ECF No. 4.) On August 26, 2020, the Court granted Plaintiff Aaron L. Jones, Sr. leave to proceed *in forma pauperis*. (ECF No. 16.) No other Plaintiffs sought leave to proceed *in forma pauperis*.

On September 21, 2020, eighteen Plaintiffs filed what appears to be an Amended Complaint against Governor Mike DeWine; Annette Chambers-Smith, the Director of the ODRC; Ernie Moore, the Deputy Director of the ODRC; Dr. Eddy Andrews, the Medical Director of the ODRC; and Karen Stanforth, the Chief Medical Inspector of the ODRC. (ECF No. 22 (the "Amended Complaint").) On October 24, 2020, six Plaintiffs filed a Request for Removal from Civil Action, seeking to withdraw from the subject action and file their claims in

a separate lawsuit. (ECF No. 24.) The Court takes judicial notice that these six plaintiffs are pursuing their claims in a related case, *Joseph Shine-Johnson, et al. v. Mike DeWine, et al.*, S.D. Ohio Case No. 20-5919 (the "Related Case").[1] For good cause shown, the Court therefore **GRANTS** Plaintiffs' request, ECF No. 24. Plaintiffs Joseph Shine-Johnson, Jarron V. Earley-Tabor, Rubin L. Williams, Antonio Henderson, Victor Steel, and James Goodson are hereby **DISMISSED** from this case **WITH PREJUDICE**.[2]

With regard to the twelve remaining Plaintiffs, this matter is now before the Court for an initial screen of Plaintiffs' Amended Complaint, ECF No. 22, under 28 U.S.C. §§ 1915(e)(2), 1915A to identify cognizable claims and to recommend dismissal of Plaintiffs' Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. This matter is also before the Court on Plaintiffs' Motion for Default Judgment, ECF No. 3, and Plaintiffs' Motion for the Appointment of Counsel, ECF No. 12.

For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiffs' claims in their entirety, but that the Court **GRANT LEAVE** to Plaintiff Jones to **AMEND** to develop his individual claim(s).

---

[1] *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[2] The Court also takes judicial notice that Plaintiff Troy Mason is proceeding in the Related Case, yet he did not request to be removed from the subject action. For the reasons discussed herein, it is **RECOMMENDED** that Plaintiff Mason be **DISMISSED** from this case. The Court will perform an initial screen of Plaintiff Mason's claims in the related case at a later time.

The Court also **DENIES AS MOOT** Plaintiffs' Motion for Default Judgment, ECF No. 3, and **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for the Appointment of Counsel, ECF No. 12.

## I.

As a preliminary matter, the Amended Complaint is titled as followed: "Plaintiff(s) Class Action Injunction Pursuant to Fed. R. Civ. Proc. 23(a)(b)(2) & (3), in Executive Order of Release Enacted by Defendants." (ECF No. 22. at PAGEID # 124.) The Amended Complaint, however, is devoid of any allegations on behalf of a putative class. Therefore, to the extent Plaintiffs intend to assert claims on behalf of a class, the Amended Complaint is deficient. Fed. R. Civ. P. 8(a).

Moreover, because Plaintiffs are non-attorneys and inmates proceeding *pro se*, they cannot adequately represent a class. *See Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) ("[N]on-attorneys proceeding pro se cannot adequately represent a class."); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) ("[P]ro se prisoners are not able to represent fairly the class."); *Marr v. Michigan*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996) (providing that "an imprisoned litigant who is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests of the class") (internal citation omitted). "'[T]he competence of a layman is clearly too limited to allow him to risk the rights of others.'" *Nelson v. Heldman*, No. 3:14-cv-01264, 2016 WL 951533, at *2 (N.D. Ohio Mar. 14, 2016) (quoting *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)). Thus, to the extent Plaintiffs seek to assert their claims as a class action under Federal Rule of Civil Procedure 23, Plaintiffs may not so proceed. *See Martin v. Zariwala*, No.

2:18-CV-270, 2018 WL 2725434, at *3 (S.D. Ohio June 6, 2018), *report and recommendation adopted*, No. 2:18-CV-270, 2018 WL 4804663 (S.D. Ohio Oct. 4, 2018).

## II.

According to the Amended Complaint, Plaintiffs are inmates at Belmont Correctional Institution ("BCI"), and they allege that Defendants are not adhering to proper social distancing and other public health-related protocols in light of the COVID-19 pandemic.  (*See generally* ECF No. 22.)  Plaintiffs purport to allege a class action under Federal Rule of Civil Procedure 23, but (as discussed above) the Amended Complaint does not contain any class allegations, and it does not set forth to define a putative class.  Rather, the Amended Complaint contains multiple general allegations regarding the conditions at BCI in response to the COVID-19 pandemic, including that "all incarcerated people [at BCI] are at heightened risk of contracting COVID-19." (ECF No. 22 at PAGEID # 127, ¶ 12.)

Plaintiffs allege that "[d]ue to the negligence and ['deliberate indifference'] [] of the health and safety of inmates, and the failures of [all] said Defendant(s') duties and [obligations], which created the unsafe environment [and] health conditions by overcrowding," Defendants have violated Plaintiffs' Eighth Amendment rights "by creating conditions that would create long term physical and mental health conditions," including death, due to COVID-19.  (*Id.* at PAGEID ## 130-131, ¶ 33; PAGEID # 132, ¶ 47.)  Plaintiffs further allege that "[h]ad the said Defendants been in compliance[] with ACA standards and the Ohio Administrative Code, when the State of Emergency occurred, [BCI] would have been better prepared to prevent and maintain the spread of COVID-19."  (*Id.* at PAGEID # 131, ¶ 34.)

Plaintiffs bring this action against Defendants DeWine, Chambers-Smith, Moore, Andrews, and Stanforth, in their official capacities.  (*Id.* at PAGEID # 127, ¶ 9.)  Plaintiffs seek

the following relief:  (a) a declaration that "the acts [and] omissions described herein [violated] Plaintiff[s'] rights under the Constitution [and] laws of the United States"; (b) $2,500,000.00 in monetary damages, to be distributed to the Plaintiffs; and (c) the compassionate release of Plaintiffs, "[either] home [or] to somewhere that they [no] longer [have] to worry about [hazardous] conditions."  (*Id.* at PAGEID # 132, ¶¶ 50-51.)

Separate from the Plaintiffs' collective claims, Plaintiff Jones also appears to assert an individual claim, alleging that in April 2020 he requested a breathing treatment for his bronchitis, but he was told by three separate nurses at BCI that they were not allowed to provide the treatment.  (*Id.* at PAGEID # 132, ¶ 49.)  Plaintiff Jones attaches a sworn declaration to the Amended Complaint in support.[3]  (*See id.* at PAGEID ## 140-142 (the "Declaration").)  In the Declaration, Plaintiff Jones alleges that as a "Chronic Care" patient, he is supposed to see a doctor every 90 days, but he has not been able to make regular appointments with the BCI Medical Department because of the pandemic.  (*Id.*)  The Declaration also sets forth various alleged administrative violations at BCI which Plaintiff Jones believes constitute violations of his Eighth Amendment rights.  (*Id.*)  Even reading the Declaration as part of the Amended Complaint, it is unclear what relief Plaintiff Jones seeks.

## III.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are

---

[3] The Amended Complaint also has attached a sworn declaration by Plaintiff James T. Goodson, detailing Plaintiff Goodson's experience at BCI.  (*See* ECF No. 22 at PAGEID ## 134-137.) Plaintiff Goodson, however, is no longer a Plaintiff in this case, as he is proceeding as a Plaintiff in the Related Case.  Accordingly, the Court will not consider whether Plaintiff Goodson's declaration sets forth any separate individual claims.

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).  To address this concern, Congress included subsection (e)[4] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \*     \*     \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

---

[4] Formerly 28 U.S.C. § 1915(d).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## IV.

Plaintiffs bring their federal law claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

*Id.*  In order to proceed under Section 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985).  As a general rule, a plaintiff proceeding under Section 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence.  *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  Mere negligence is not actionable under Section 1983.  *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

Here, Plaintiffs expressly bring their claims against Defendants in their official capacities.  (ECF No. 22 at ¶ 9 ("Each Defendant is sued their own official capacity.").)  "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'"  *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  The Eleventh Amendment of the United States Constitution operates as a bar to federal court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent.  *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000).  "It is well established that § 1983 does not abrogate the Eleventh Amendment."  *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).  Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages.  *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).  Here, Plaintiffs seek monetary

damages. (ECF No. 22 at PAGEID 132, ¶ 51 ("Plaintiff(s) seeks a lawful judgment of $2.5 million to be distributed unto the Plaintiff(s).").) Accordingly, it is **RECOMMENDED** that Plaintiffs' claim for monetary relief be **DISMISSED**.

That recommendation notwithstanding, there is an exception to the state sovereign immunity rule, "if an official-capacity suit seeks only prospective injunctive or declaratory relief." *Shine-Johnson v. Gray*, No. CV 2:19-5395, 2020 WL 3036072, at *3 (S.D. Ohio June 5, 2020) (citing *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009); *Papasan v. Allain*, 478 U.S. 265, 276 (1986)); *see also Mitchell v. Ohio State Univ.*, No. 2:19-CV-4162, 2020 WL 5250459, at *6 (S.D. Ohio Sept. 3, 2020) ("Official-capacity § 1983 claims are limited to prospective injunctive relief."). Here, Plaintiffs seek declaratory and injunctive relief. (ECF No. 22 at PAGEID # 132, ¶¶ 50-51.) Specifically, Plaintiffs seek a declaration that "the acts [and] omissions described herein, [violated] Plaintiff[s'] rights under the Constitution [and] laws of the Untied States," as well as an Order releasing Plaintiffs from BCI so that "they [no] longer [have] to worry about [hazardous conditions" related to COVID-19. (*Id.*)

Because Plaintiffs seek declaratory and injunctive relief against the Defendants, the exception to the state sovereign immunity rule may apply. The Court will analyze Plaintiffs' claims to see if the exception applies to any of the Defendants.

## A.     Defendant DeWine

Plaintiffs' allegations against Defendant DeWine are limited. At the outset, Plaintiffs allege that Defendant DeWine "announced the existence of COVID-19's community spread . . . and further restricted large gatherings of Ohioans." (ECF No. 22 at PAGEID # 127, ¶ 10.) Plaintiff then allege that Defendant DeWine, along with the other Defendants, violated O.R.C. § 2921.44, which provides in relevant part:

(C) No officer, having charge of a detention facility, shall negligently do any of the following:

>   (1) Allow the detention facility to become littered or unsanitary;

>   (2) Fail to provide persons confined in the detention facility with adequate food, clothing, bedding, shelter, and medical attention;

>   (3) Fail to control an unruly prisoner, or to prevent intimidation of or physical harm to a prisoner by another;

>   (4) Allow a prisoner to escape;

>   (5) Fail to observe any lawful and reasonable regulation for the management of the detention facility.

(*Id.* at PAGEID # 128, ¶ 15 (citing Ohio Rev. Code § 2921.44).)  Further, reading the Amended Complaint liberally, it appears the Plaintiffs reference Defendant DeWine by alleging that the Defendants, collectively, "create [or] enforce policies" that serve as the basis of their claims.  (*Id.* at PAGEID # 131, ¶ 38.)  This last allegation is critical, as it appears that Plaintiffs seek to assert claims against Defendant DeWine because he "create[d]" certain policies or restrictions in response to the COVID-19 pandemic.  (*Id.*)

Such allegations are insufficient to state a claim against Defendant DeWine, because Plaintiffs have failed to allege that Defendant DeWine has any specific connection to the actions which Plaintiffs contend are unconstitutional.  Construing the Amended Complaint liberally in Plaintiffs' favor, the Court can only discern that Plaintiffs implicate Defendant DeWine based on his general supervisory powers as the Governor of Ohio.  "This Court, and others, have already found such general supervisory powers insufficient to subject a state official to suit."  *Smith v. DeWine*, 476 F. Supp. 3d 635, 654 (S.D. Ohio 2020) (dismissing claims against Defendant DeWine where "Plaintiffs have failed to plead the Governor's responsibility for the direct enforcement over the ODRC's policies beyond his general executive authority.") (citing B*all v. Kasich*, 244 F. Supp. 3d 662, 673 (S.D. Ohio 2017) (finding Governor Kasich's powers to see

that the laws are executed, directing, supervising, controlling, and setting state policy, and having ultimate budgetary power insufficient to state a claim); *Hendricks v. Kasich*, No. 2:12-cv-729, 2013 WL 2243873 at *9, (S.D. Ohio May 21, 2013) (finding Governor Kasich's executive and budget authority not sufficient to show responsibility for enforcement of any law or policy relating to the claim); *Peter B. v. Sanford*, No. 6:10-767, 2012 WL 2149784, at *5, 2012 U.S. Dist. LEXIS 81500, at *17–18 (D.S.C. June 13, 2012) (finding general authority over the state Medicaid program insufficient to waive the governor's immunity)).  "While the Governor may direct broad policy initiatives to various state agencies such as the ODRC, those agencies retain responsibility for direct enforcement of those policies."  *Smith*, 476 F. Supp. 3d at 654. Accordingly, it is **RECOMMENDED** that Plaintiffs' claims against Defendant DeWine be **DISMISSED** in their entirety.

## B.      Defendants Chambers-Smith, Moore, Andrews, and Stanforth

Plaintiffs also assert allegations against Defendants Chambers-Smith, Moore, Andrews, and Stanforth (collectively referred to as the "ODRC Defendants").  None of Plaintiffs' allegations refer to any of the ODRC Defendants by name, however, as Plaintiffs instead only assert allegations about the conditions at BCI in general terms.  Specifically, Plaintiffs allege that "all incarcerated people [at BCI] are at [heightened] risk of contracting COVID-19."  (ECF No. 22 at PAGEID # 127, ¶ 12.)  In support, Plaintiffs allege that the BCI Medical Department does not test inmates with known cases of COVID-19, and that inmates with known cases of COVID-19 are not being properly quarantined.  (*Id.* at ¶ 13.)  Plaintiffs allege that social distancing protocols are not followed by the ODRC, both in the inmates' living spaces and in the common areas of BCI, which Plaintiffs allege violates various provisions of the Ohio Administrative Code.  (*Id.* at PAGEID ## 128-130.)  Plaintiffs also allege that the ODRC Defendants have

11

improperly denied inmates from scheduling "chronic care" medical appointments and most dental appointments. (*Id.* at PAGEID # 130, ¶ 26.) Plaintiffs further allege that the ODRC Defendants did not issue masks and mandate handwashing until April 2020, and that housing units are not provided with proper or adequate cleaning materials. (*Id.* at PAGEID # 131, ¶¶ 37, 40.) For these reasons, Plaintiffs believe that the ODRC Defendants "purposely and with 'deliberate indifference' choose to allow COVID-19 to run its course with uncertainty" throughout BCI. (*Id.* at ¶ 42.) Plaintiffs allege that "so far the results have ended . . . with deaths of inmates and staff, and continued cases of people who are living with COVID-19, with an increased risk of detrimental health effects, and/or death with no medical care being provided to them." (*Id.*)

Thus, Plaintiffs appear to allege two types of claims: first, that the ODRC Defendants have violated Plaintiffs' Eighth Amendment rights "by creating conditions that would create long term physical and mental health conditions, and/or [death] due to COVID-19"; and second, that the ODRC Defendants are acting with medical deliberate indifference with regard to "chronic care" and dental treatments. (ECF No. 22 at PAGEID ## 130-131, ¶¶ 26, 34.) The Undersigned will address each in turn.

**1.     Deliberate Indifference Claim**

The Eighth Amendment protects all people from "cruel and unusual punishments." U.S. Const. amend. VIII.

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being . . . .The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment . . . .

*Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))).

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), then quoting *Helling*, 509 U.S. at 31, 113 S.Ct. 2475). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong. *Id.* at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Here, the objective component of Plaintiffs' deliberate indifference claim plainly has been met, for reasons this Court previously has discussed:

> This Court agrees with the other district courts across the country [that] have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison. "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious and fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020); *see also Wilson v. Williams*, No. 4:20-cv-794, —— F.Supp.3d ——, ——, 2020 WL 1940882, at *8, 2020 U.S. Dist. LEXIS 70674, at *19–20 (N.D. Ohio Apr. 22, 2020) (finding petitioners obviously satisfied the objective requirement stating "[a]t this moment a deadly virus is spreading amongst [the prison] population and staff," which can lead to pneumonia, diminished oxygen, organ failure, and death.); *Money*, 453 F.Supp.3d at ——, 2020 WL 1820660 at *18 (noting that that "nobody contests the serious risk that COVID-19 poses to all inmates and prison staff, and even more to the most vulnerable inmates"); *Wilson v. Williams*, 961 F.3d 829, 842 (6th Cir. 2020) (finding a substantial risk of serious harm satisfying the objective element of the Eighth Amendment based on the conditions in an Ohio prison in light of COVID-19).

13

*Smith*, 476 F.Supp.3d at 662; *see also Perez-Perez v. Adducci*, 459 F. Supp. 3d 918, 926–27 (E.D. Mich. 2020) ("No one can deny that the health risks caused by the pandemic are grave. Objectively, the health risks posed by COVID-19 are abundantly clear. The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death.").

The subjective component, on the other hand, requires inmates to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *Smith,* 476 F.Supp.3d at 661 (citing *Farmer,* 511 U.S. at 834, 837-38). Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. Thus, prison officials who knew of "a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson*, 961 F.3d at 840 (citing *Farmer*, at 844). The key inquiry is whether prison officials responded reasonably to the risk. *Id.* (citing *Farmer,* 511 U.S. at 844).

Against this backdrop, Plaintiffs allege that inmates are not being properly quarantined; that social distancing protocols are not followed at BCI, both in the inmates' living spaces and in the common areas; that the ODRC Defendants did not issue masks and mandate handwashing until April 2020; and that housing units are not provided with proper or adequate cleaning materials. (ECF No. 22 at PAGEID ## 128-130.) Plaintiffs further allege that as a result, "all incarcerated people are at heightened risk of contracting COVID-19," which could result in

serious health effects including, and up to, death. (*Id.* at PAGEID ## 127, 131.) Of note, Plaintiffs do not include specific allegations against any of the ODRC Defendants individually.

The Undersigned finds that Plaintiffs' allegations are insufficient to meet the subjective component of Plaintiffs' Eighth Amendment claim as a matter of law. This Court previously has held that claims based on the "protective measures taken to protect against the spread of the virus," in the absence of allegations that any of the ODRC Defendants exhibited deliberate indifference to plaintiffs' exposure to COVID-19, do not rise to a deliberately indifferent unreasonable failure to act:

> Plaintiffs in this case have failed to allege facts from which the Court can infer a violation of their Eighth Amendment rights. Although the Court is sympathetic to plaintiffs' concerns regarding COVID-19, neither plaintiff asserts that any named defendant exhibited deliberate indifference to either inmate's exposure to COVID-19. Plaintiffs' general conclusory allegation that the prison system is ill-equipped for social distancing or protecting inmates is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678. Furthermore, although plaintiffs allege that defendants were negligent in their response to the virus, negligence is insufficient to state an Eighth Amendment claim. *See Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). Plaintiffs have otherwise failed to allege facts suggesting that defendants disregarded the risks associated with COVID-19 or were otherwise deliberately indifferent to their health or safety. To the contrary, as noted above, plaintiffs complain about numerous protective measures taken to protect against the spread of the virus, maintaining that such measures also violate their constitutional rights. Accordingly, the allegations in the complaint are insufficient to state an actionable claim under the Eighth Amendment.

*McCrary v. DeWine,* No. 1:20-CV-388, 2021 WL 320737, at *4 (S.D. Ohio Feb. 1, 2021) (internal footnote omitted). Supporting this conclusion is the fact that "the CDC's own guidance 'presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings.'" *Blackburn v. Noble*, No. 3:20-cv-46, 2020 WL 4758358, at *6 (E.D. Kent. Aug. 17, 2020) (citing *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020)). Further,

> the fact that COVID-19 has spread among [] inmates does not establish . . . the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19. *See Farmer*, 511 U.S. at 844, 114 S.Ct. 1970 (the fact that "the harm ultimately was not averted"

15

does not demonstrate deliberate indifference); *Wilson*, 961 F.3d at 841 (finding "while the harm imposed by COVID-19 on inmates at Elkton ultimately [is] not averted, the BOP has responded reasonably to the risk and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights," noting evidence that the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, providing mask, and engaging in efforts to expand testing "demonstrate the opposite of a disregard of a serious health risk") (internal quotations and citations omitted).

*Id*. at *7 (footnote omitted).

To that end, this Court has found that Defendant Chambers-Smith, Director of the ODRC, acted reasonably in responding to the COVID-19 pandemic and engaged in "an extensive effort to combat this new disease and protect the prisoners' health and safety":

It is clear that the Director was aware of the risk COVID-19 presented based on her statements about the disease and the extensive actions she took in response. The key question is whether the Director "responded reasonably to th[is] risk." *Wilson*, 961 F.3d at 840 (citing *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970). Importantly, the resultant harm, while serious and concerning, does not establish a liable state of mind. *See Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (finding the district court incorrectly "treated an increase in COVID-19 infections as proof that the defendants deliberately disregarded an intolerable risk"). Putting aside the resultant harm, the evidence shows the Director responded reasonably to the risk.

The Director began preparing for the introduction of COVID-19 into Ohio's prisons before COVID-19 was even confirmed in the United States. (Def. Director Resp. Prelim. Inj. at Ex. A, ¶ 8.) After COVID-19 entered the United States and then Ohio's prison system, the Director continued to coordinate a response among all of ODRC's facilities which included educating staff and inmates, tracking and distributing PPE, implementing social distancing measures among staff and inmates, increasing cleaning and sanitizing, screening visitors, staff, and inmates, cancelling visitation, quarantining those with symptoms, and implementing other policies designed to prevent COVID-19's spread. (See id.) The Sixth Circuit has previously held actions such as these a reasonable response. *See e.g., Wilson*, 961 F.3d at 840 (finding the Bureau of Prisons' response to COVID-19 including screening for symptoms, educating staff and inmates, cancelling visitation, quarantining new inmates, implementing cleaning, providing disinfectant, and more, a reasonable response); *Wooler v. Hickman Cnty*., 377 F. App'x 502, 506 (6th Cir. 2010) (holding a jail nurse's actions of cleaning every cell, quarantining infected inmates, and distributing information about a bacterial disease precluded a finding of deliberate indifference).

> Other courts around the country have also found similar actions taken in response to COVID-19 enough to preclude a finding of deliberate indifference. *See e.g.,* *Valentine*, 956 F.3d at 802 (noting that the prison officials took measures recommended by the CDC and the plaintiffs offered no evidence they subjectively believed those actions were inadequate); *Swain*, 958 F.3d at 1089 (noting that neither the resultant harm in COVID-19 infections or the inability to achieve social distancing constituted a state of mind more blameworthy than negligence); *Money*, 453 F.Supp.3d at ——, 2020 WL 1820660 at *18 (finding the plaintiffs did not have a chance of success on this claim because the prison officials had come forth with a lengthy list of actions they had taken to try and protect inmates from COVID-19 and "the record simply [did] not support any suggestion that [the defendants] ha[d] turned the kind of blind eye and deaf ear to a known problem that would indicate 'total unconcern' for the inmates' welfare" (citing *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012))). There is no evidence that the Director subjectively believed her actions were inadequate or that she indicated a total concern for the inmates' welfare.

*Smith*, 476 F.Supp.3d at 663. The Court takes judicial notice of those findings here, and extends those findings to the ODRC Defendants in this case, in the absence of any specific allegations by Plaintiffs against any of the ODRC Defendants:

> "[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *United States v. Mont*, 723 Fed. Appx. 325, 327 n.3 (6th Cir. 2018) (citing *Lyons v. Stovall*, 188 F.3d 327, 332, n.3 (6th Cir. 1999) (brackets, quotation marks, and citation omitted)). While this doctrine typically does not extend to the factual findings of another court, notice may be taken of "proceedings in other courts . . . if those proceedings have a direct relation to matters at issue." *United States v. Neal*, 577 Fed. Appx. 434, 452 n. 11 (6th Cir. 2014) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (ellipsis and emphasis in original)).

*Schneider v. Credit Human Federal Credit Union*, No. 4:20-cv-1747, 2021 WL 147050, at *1 n.2 (N.D. Ohio Jan. 15, 2021).

Although Plaintiffs may disagree with the sufficiency of the actions that the ODRC Defendants have taken in response to COVID-19, they have not alleged facts sufficient to demonstrate that the ODRC Defendants acted with "deliberate indifference" within the meaning of the Eighth Amendment. Accordingly, it is **RECOMMENDED** that Plaintiffs' deliberate indifference claims against the ODRC Defendants be **DISMISSED** in their entirety.

### 2.        Medical Deliberate Indifference

Plaintiffs also claim that the ODRC Defendants have acted with medical deliberate indifference with regard to "chronic care" and dental treatments.  (ECF No. 22 at PAGEID ## 131, ¶ 34.)  It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his or her] serious medical needs."  *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted).  A claim for medical deliberate indifference "has both objective and subjective components."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).  The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).]  The subjective component regards prison officials' state of mind.  *Id.*  Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011).  Where the risk of serious harm is obvious, it can be inferred that the defendants had knowledge of the risk.  *Farmer*, 511 U.S. at 842.  The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.  Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments.  However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted).  Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component."  *Grose v. Corr.*

18

*Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012). Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Plaintiffs must again satisfy both the objective and subjective components to adequately state a claim for deliberate indifference. First, the objective component mandates that a plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted).

Here, Plaintiffs have failed to meet their initial burden to allege that they have a "sufficiently serious" medical need. Although Plaintiffs allege that the ODRC Defendants "deny chronic care appointments for chronic care inmates that have chronic care issues" and for inmates seeking certain dental treatments, Plaintiffs do not allege that ***they*** have such medical needs. (ECF No. 22 at PAGEID 130, ¶ 26.) Because Plaintiffs failed to satisfy the objective component of their medical deliberate claim, the Undersigned need not, and will not, analyze whether Plaintiffs satisfied the subjective component. As discussed below, it appears Plaintiff Jones may believe he has an individual claim for medical deliberate indifference, but Plaintiffs collectively have failed to state such a claim. Accordingly, it is **RECOMMENDED** that Plaintiffs' medical deliberate indifference claims against the ODRC Defendants be **DISMISSED** in their entirety.

**V.**

Plaintiff Jones, who has been granted leave to proceed *in forma pauperis*, also appears to bring an individual claim against Defendants under Section 1983.  (ECF No. 22 at PAGEID # 132, ¶ 49.)  Specifically, Plaintiff Jones alleges that he has bronchitis, and in April 2020, he requested a breathing treatment for his bronchitis, but he was told by three separate nurses that they were not allowed to provide the treatment to Plaintiff Jones.  (*Id.*)  The Amended Complaint does not shed any other light on Plaintiff Jones' individual claim, but the attached Declaration also alleges that as a "Chronic Care" patient, he is supposed to see a doctor every 90 days, but he has not been able to make regular appointments with the BCI Medical Department because of the pandemic.  (*Id.* at PAGEID ## 140-142.)  The Declaration also sets forth various alleged administrative violations at BCI which Plaintiff Jones believes constitute violations of his Eighth Amendment rights.  (*Id.*)

Even reading the Declaration as part of the Amended Complaint, the Court cannot conclude that Plaintiff Jones has stated a claim upon which relief can be granted at this point. First, it is unclear against whom Plaintiff Jones asserts his allegations, as neither the Amended Complaint nor the Declaration identifies any Defendants by name.  It is unclear, for example, whether Plaintiff Jones intends to assert claims against the unnamed nurses who refused to provide treatment, or if he intends to asserts claims against any of the ODRC Defendants. Although respectful of Plaintiff's *pro se* status, *Haines*, 404 U.S. at 520, this Court is not permitted to guess what claims Plaintiff asserts, let alone against which Defendant(s) he asserts such claims.  *Frengler v. Gen. Motors*, 482 F. App'x at 976–77.  Accordingly, it is **RECOMMENDED** that Plaintiff Jones be **GRANTED LEAVE** to **AMEND** the Complaint to develop his individual claim(s).  Should Plaintiff Jones choose to amend his Complaint to assert

individual claims against specific Defendants, then this Court will evaluate the viability of such claims at that time. Plaintiff Jones is **ADVISED** that, should the Court allow it, any forthcoming Amended Complaint shall be limited to his, and only his individual claims.

## VI.

This matter is also before the Court for consideration of Plaintiffs' Motion for Default Judgment, ECF No. 3. Here, the Court has not yet ordered service of Plaintiffs' Complaint, let alone service of the now-operative Amended Complaint. Therefore, Plaintiffs' Motion for Default Judgment is premature, as Defendants have not missed any deadline for answering or otherwise responding to Plaintiffs' pleadings. *See Russell v. Ohio*, No. 2:11-CV-1158, 2012 WL 870729, at *2 (S.D. Ohio Mar. 14, 2012), *report and recommendation adopted*, No. 2:11-CV-1158, 2012 WL 1142925 (S.D. Ohio Apr. 4, 2012) ("Because the Court has not yet ordered service of Plaintiff's Complaint, Defendants' deadline for answering or otherwise responding to Plaintiff's Complaint has not expired. Thus, at this juncture, Plaintiff's Motion for Default Judgment is premature."). Accordingly, Plaintiffs' Motion, ECF No. 3, is **DENIED AS MOOT**.

## VII.

This matter is also before the Court for consideration of Plaintiffs' Motion for Appointment of Counsel, ECF No. 12. Although this Court has statutory authority under 28 U.S.C. § 1915(e) to appoint counsel in a civil case, appointment of counsel is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (citation omitted). Rather, "[i]t is a privilege that is justified only by exceptional circumstances." *Id.* at 606. The Court has evaluated whether such exceptional circumstances exist in this case and determines that the appointment of counsel is not warranted at this juncture. Accordingly, Plaintiffs' Motion for Appointment of Counsel, ECF No. 12, is **DENIED WITHOUT PREJUDICE**.

## VIII.

Separately, it appears that Plaintiff Jones inadvertently filed a brief in support of an unrelated habeas action pending in state court. (ECF No. 18.) Because it is unrelated to this case, the Clerk is **DIRECTED** to **STRIKE** Plaintiff Jones' filing, ECF No. 18, from the docket.

## IX.

For the reasons stated above, the Court **GRANTS** Plaintiffs' Request for Removal, ECF No. 24. Plaintiffs Joseph Shine-Johnson, Jarron V. Earley-Tabor, Rubin L. Williams, Antonio Henderson, Victor Steel, and James Goodson are hereby **DISMISSED** from this case **WITH PREJUDICE**.

Further, the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiffs' claims in their entirety, but that the Court **GRANT LEAVE** to Plaintiff Jones to **AMEND** to develop his individual claim(s).

Finally, the Court **DENIES AS MOOT** Plaintiffs' Motion for Default, ECF No. 3, and the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for the Appointment of Counsel, ECF No. 12. The Clerk is **DIRECTED** to **STRIKE** ECF No. 18 from the docket.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, it may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: March 19, 2021                    /s/ *Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**